# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

JAMARLIN MARTIN,

   Plaintiff,

<u>COMPLAINT</u>

<u>DEMAND FOR JURY TRIAL</u>

-against-

Civil Action No. _____

MARK ZAGORSKI, DOUBLEVERIFY HOLDINGS INC., LAURA DESMOND, DAVIS NOELL, PROVIDENCE EQUITY, KATE JHAVERI,

   Defendants.

-------------------------------------------------------X

## COMPLAINT FOR WHISTLEBLOWER RETALIATION, CIVIL CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS, AND NEGLIGENCE

Plaintiff Jamarlin Martin ("Plaintiff"), proceeding pro se, alleges as follows:

## I. STATEMENT OF FACTS

### A. Background and Whistleblower Activity

1. During February 2024, Plaintiff became suspicious of potential conflicts of interest involving his legal counsel and a broader ad fraud conspiracy.
2. Recognizing that traditional processes of justice and constitutional protections might have become conflicted and compromised, Plaintiff became an SEC whistleblower to hedge against potential obstruction of justice.

3. Plaintiff submitted multiple supplements to his original SEC filing documenting systemic, intelligence-grade ad fraud.
4. The global ad fraud industry generates an estimated $143 billion annually, operating within a weak U.S. regulatory framework.
5. Plaintiff's small business, Nubai Ventures Inc., suffered material harm from fraudulent bots originating from Outbrain Inc. in January 2023.
6. Through extensive research and consultation with independent experts, Plaintiff determined these were not instances of institutional fraud tolerance but sophisticated operations designed specifically to evade detection systems while generating massive profits for potentially "off-book" and conflicted entities, outside of United States legal jurisdiction.

### B. Whistleblower Retaliation

7. After becoming an SEC whistleblower, Plaintiff experienced a coordinated pattern of retaliation consistent with 18 U.S.C. § 1514A (Sarbanes-Oxley whistleblower protection provisions) violations.
8. This retaliation included harassment, obstruction of justice, sophisticated hacking attempts, death threats, physical surveillance, digital intimidation, and a documented eSIM-card jacking confirmed by Verizon.
9. These actions constitute whistleblower retaliation under federal law and a conspiracy to interfere with Plaintiff's civil rights, as they represent coordinated efforts to prevent Plaintiff from exercising his legally protected right to report securities violations.
10. On June 17, 2024, an FBI official contacted Plaintiff directly to discuss potential criminal responses by actors within the ad fraud conspiracy, establishing federal law enforcement awareness of the situation.

### C. Public Identification as Whistleblower

11. Plaintiff publicly self-identified as an "unconventional whistleblower" in a May 3, 2024 Open Letter to Defendant Kate Jhaveri and Outbrain's Board (Board Letter #2).
12. In Plaintiff's first board letter (April 16, 2024), he systematically exposed that 80-90% of Outbrain's domain click destination websites used anonymous registrations, 70% of click revenue originated outside U.S. legal jurisdiction (SEC filing), and 70-80% of click destinations lacked identified legal entities on their privacy and terms of service pages.
13. These findings align with concerns later raised by Senators Marsha Blackburn and Richard Blumenthal in their February 7, 2025 letter to Defendant Mark

Zagorski regarding DoubleVerify concealing website URLs where client ads appear.

### D. Strategic Bridge Placement and Governance Structure

14. A critical aspect of this case involves the interrelationship between two key corporate governance structures, with DoubleVerify's Board controlled by Defendant Providence Equity Partners, creating a concerning governance connection through strategic personnel positioning.
15. On April 24, 2024, in direct response to Plaintiff's Board Letter #1 on April 16, 2024, Defendant Mark Zagorski, CEO of DoubleVerify Holdings, Inc., joined Outbrain's Board following another Outbrain Board Member's sudden resignation.
16. This appointment represents a critical "strategic bridge placement" - a pattern Plaintiff's research identified whereby individuals simultaneously hold positions at companies on both sides of a verification relationship, creating information asymmetry and control over detection systems.
17. Zagorski's prior deep relationship with Viola Ventures through his role as CEO of eXelate established his connection to the same leadership that sits on Outbrain's Board, creating a circular relationship between verification and traffic companies accused of systemic ad fraud.
18. Zagorski's dual role as CEO of a verification company (DoubleVerify) and board member of a traffic company (Outbrain) creates a textbook conflict of interest and breach of fiduciary duty, as his obligation to detect fraud at one company conflicts directly with governance responsibilities at another.
19. This bridge pattern extends to Defendant Jhaveri, who simultaneously served on Outbrain's Board while holding the position of Chief Marketing Officer at TikTok (a Chinese-owned company).

### E. Attorney Conflicts of Interest

20. Shortly after Zagorski's appointment, Plaintiff received confirmation that Outbrain's legal counsel, Yenisey Rodriguez-McCloskey, had reviewed Plaintiff's case and business circumstances with another attorney and initially considered representing Plaintiff before switching to represent Outbrain - a clear conflict of interest under legal ethics rules.
21. Within 24 hours of Zagorski joining Outbrain's board, Plaintiff's attorney notified him of plans to withdraw representation, demonstrating coordinated action consistent with a conspiracy to interfere with Plaintiff's civil rights.

### F. The Prychodko Case and DoubleVerify Leadership Transition

22. Zagorski's appointment as DoubleVerify CEO followed a series of events that mirror sophisticated tradecraft patterns.
23. On July 10, 2018, Lara Prychodko died under suspicious circumstances at her Manhattan apartment building.
24. Though initially classified as an accident, former New York City Chief Medical Examiner Michael Baden determined her death was homicide by "ligature strangulation," noting the physical impossibility of her 5'10" frame accidentally entering a 15"x18" trash chute and the limited bleeding from internal injuries consistent with post-mortem placement.
25. Plaintiff's analysis identified three classic misdirection tactics in the Prychodko case: a. The "Tragic Accident" misdirection - Creating a seemingly plausible accidental death scenario; b. The "Personal Relationship" misdirection - Focusing attention on her relationship with DoubleVerify CEO Wayne Gattinella; and c. The "Domestic Dispute" misdirection - Directing suspicion toward her estranged husband and ongoing divorce proceedings.
26. These multiple concurrent misdirections match sophisticated tradecraft designed to create confusion and multiple plausible explanations.
27. Significantly, Prychodko's father discovered evidence of tracking software on her computer - a pattern identical to the hacking and surveillance Plaintiff experienced after becoming a whistleblower, suggesting similar operational methods.
28. On February 22, 2020, a story appeared in the New York Post connecting Prychodko to then-DoubleVerify CEO Wayne Gattinella.
29. Six days later, on February 28, 2020, Gattinella was terminated by the DoubleVerify Board with Defendant Laura Desmond stepping in as interim CEO.
30. Zagorski was hired on July 2, 2020, completing the leadership transition.

## G. Providence Equity's Role and Responsibility

31. Defendant Providence Equity Partners, as the largest shareholder and controlling governance force at DoubleVerify, bears direct responsibility for the company's operations and oversight failures.
32. Providence Equity Partners installed Defendants Davis Noell and Laura Desmond as Directors, creating a leadership structure that enabled the strategic positioning of Zagorski despite significant red flags.
33. Defendant Laura Desmond, a Providence Equity Partner, was interim placeholder CEO until Zagorski officially started.
34. Notably, Providence Equity had previous experience with fraud allegations through its ownership of Altegrity, whose subsidiary USIS lost government contracts following whistleblower allegations of widespread fraudulent

background checks and entered bankruptcy after settling with the Department of Justice in 2015.

35. This prior experience with fraud allegations provided Providence Equity with enhanced awareness of fraud risks and heightened duty to implement robust governance controls.
36. Despite this experience, Providence Equity Partners, through Defendants Noell and Desmond, approved Zagorski's hiring as CEO without adequate vetting of his connections to Viola Ventures, Outbrain's primary investor and institutional sponsor.
37. This represents either negligent breach of fiduciary duty or knowing complicity in compromising American digital trust systems.
38. As the dominant governance force controlling DoubleVerify, Providence Equity Partners had both the power and responsibility to prevent the strategic bridge placement that enabled verification system manipulation.

## H. Pattern of Obstruction as Whistleblower Retaliation

39. The Defendants deployed a systematic pattern of obstruction specifically as a weapon of whistleblower retaliation.
40. This obstruction was not merely incidental but represented a deliberate strategy to prevent Plaintiff from exposing the broader ad fraud conspiracy through his SEC reporting and active litigation.
41. Defendants knew the Plaintiff was a whistleblower from Plaintiff's self-disclosure to Zagorski and Jhaveri in Board Letter #2 on May 3, 2024.
42. In addition, the Plaintiff has evidence that his computer systems were hacked and the ad fraud conspiracy accessed multiple SEC submissions early.
43. The obstruction pattern included attorney conflicts, strategic withdrawals of representation, and procedural manipulation designed to frustrate Plaintiff's ability to pursue his claims, specifically: a. Attorney Yenisey Rodriguez-McCloskey's conflict of interest in considering representation of Plaintiff before switching to represent Outbrain; b. Plaintiff's original attorney's withdrawal within 24 hours of Zagorski joining Outbrain's Board; and c. Multiple subsequent attorney disengagements creating a pattern of representation interference.
44. These actions violated Plaintiff's protected whistleblower status and constituted part of the broader retaliation campaign as obstruction of justice was used as a strategic weapon of retaliation.
45. Evidence and legal discovery will show these Defendants knew about the ad fraud conspiracy and participated in whistleblower retaliation, as Plaintiff's SEC reporting threatened not only Outbrain and DoubleVerify but potentially Providence Equity and its partners personally.

## I. Information Suppression

46. To overcome the obstruction of justice, aggressive whistleblower retaliation, and gross resource disparity, Plaintiff employed advanced artificial intelligence tools to detect and isolate patterns, irregularities, and factors within the massive ad fraud conspiracy.
47. These tools enabled Plaintiff to identify connections and operational patterns that would have remained hidden using conventional analysis.
48. Plaintiff's evidence will show the coordinated whistleblower retaliation and conspiracy to interfere with civil rights were commensurate with the institutional size of the $143 billion global ad fraud market.
49. In a final act of information suppression consistent with the broader pattern, DoubleVerify has systematically removed all press releases dated before 2023 from its corporate website, including Zagorski's hiring announcement from July 2020.
50. This selective removal of historical information demonstrates consciousness of guilt and ongoing efforts to conceal the relationship between the strategic positioning of leadership and the broader conspiracy.
51. The deliberate elimination of this timeline creates an information vacuum regarding the critical transition period following Gattinella's departure and Zagorski's appointment.
52. The severity of the sophisticated whistleblower retaliation, obstruction of justice, and related irregularities has compelled the Plaintiff to take action to mitigate the risk of further obstruction.
53. As a pro se litigant, the Plaintiff aims to confront the conspiracy and the Defendants directly, establishing a clear connection to the court to support a constitutional process and outcome.

## II. JURISDICTION AND VENUE

54. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it involves federal questions arising under the Dodd-Frank Act, 15 U.S.C. § 78u-6(h), and federal civil rights statutes, 42 U.S.C. § 1985(3).
55. This Court has personal jurisdiction over Defendants as they conduct substantial business within this District, DoubleVerify maintains its headquarters in New York, and the acts and omissions giving rise to the claims occurred within this District.
56. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants are subject to personal jurisdiction in this District.

## III. PARTIES

57. Plaintiff Jamarlin Martin is an individual residing in Florida. He is the founder and CEO of Nubai Ventures Inc. and became an SEC whistleblower in February 2024.
58. Defendant Mark Zagorski is an individual who is the Chief Executive Officer of DoubleVerify Holdings, Inc., and a member of the Board of Directors of Outbrain Inc. He is sued in his individual capacity.
59. Defendant DoubleVerify Holdings, Inc. is a Delaware corporation with its principal place of business in New York, New York. It is a publicly traded company that provides digital media measurement, data, and analytics services.
60. Defendant Laura Desmond is an individual who serves as a Director on DoubleVerify's Board and previously served as interim CEO. She is affiliated with Providence Equity Partners and is sued in her individual capacity.
61. Defendant Davis Noell is an individual who serves as Chairman of the Board of DoubleVerify and is Senior Managing Director at Providence Equity Partners. He is sued in his individual capacity.
62. Defendant Providence Equity Partners is a global private equity firm with significant ownership and control of DoubleVerify Holdings, Inc.
63. Defendant Kate Jhaveri is an individual who served on Outbrain's Board of Directors while simultaneously serving as Chief Marketing Officer at TikTok. She is sued in her individual capacity.

## IV. CLAIMS FOR RELIEF

### COUNT I: WHISTLEBLOWER RETALIATION UNDER DODD-FRANK (15 U.S.C. § 78u-6(h))

(Against All Defendants)

64. Plaintiff incorporates by reference paragraphs 1-63 as if fully set forth herein.
65. Plaintiff engaged in protected activity under the Dodd-Frank Act when he provided information about potential securities law violations to the SEC in February 2024 and multiple supplemental submissions thereafter.
66. Defendants were aware of Plaintiff's whistleblower status through his public self-identification in Board Letters dated April 16, 2024, and May 3, 2024.
67. Following Plaintiff's protected activity, Defendants took materially adverse actions against him, including but not limited to: a. Facilitating conflicts of interest with Plaintiff's legal representation; b. Creating information asymmetry through strategic bridge placements; c. Engaging in or permitting surveillance, hacking, and digital intimidation; d. Removing critical historical information from corporate

websites to conceal relevant connections; and e. Obstructing Plaintiff's ability to pursue legal remedies.
68. Defendants' adverse actions were causally connected to Plaintiff's protected whistleblower activity, as evidenced by the timing and targeted nature of the retaliation.
69. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered economic damages, reputational harm, and emotional distress.

## COUNT II: CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS (42 U.S.C. § 1985(3))

(Against All Defendants)

70. Plaintiff incorporates by reference paragraphs 1-69 as if fully set forth herein.
71. Defendants knowingly and willfully conspired together for the purpose of depriving Plaintiff of the equal protection of the laws and of equal privileges and immunities under the laws, specifically: a. The right to be free from retaliation for reporting securities violations to the SEC; b. The right to access the courts and legal system without interference or obstruction; c. The right to petition the government for redress of grievances; and d. The right to receive due process of law.
72. Defendants' conspiracy was motivated by a class-based animus, as Plaintiff belongs to a protected class of whistleblowers who are protected from retaliation under federal law.
73. Defendants' conspiracy included specific overt acts in furtherance of the conspiracy, including: a. Strategic placement of Defendant Zagorski on Outbrain's Board immediately following Plaintiff's first Board Letter; b. Coordinated withdrawal of Plaintiff's legal representation within 24 hours of Zagorski's board appointment; c. Facilitation of conflicted legal representation through Attorney Rodriguez-McCloskey; d. Deliberate removal of historical information from corporate websites to conceal connections; e. Permitting or facilitating surveillance and hacking of Plaintiff's communications; and f. Coordinated obstruction of Plaintiff's ability to pursue legal remedies.
74. Each Defendant acted with knowledge of the conspiracy and with the specific intent to further its objectives.
75. As a direct and proximate result of Defendants' conspiracy and the acts taken in furtherance thereof, Plaintiff has suffered deprivation of his constitutional and statutory rights, as well as economic damages, reputational harm, and emotional distress.

## COUNT III: NEGLIGENCE

(Against All Defendants)

76. Plaintiff incorporates by reference paragraphs 1-75 as if fully set forth herein.
77. Defendants, as corporate officers and directors, owed a duty of care to: a. Properly oversee corporate governance and prevent conflicts of interest; b. Prevent retaliatory actions against whistleblowers; c. Conduct adequate due diligence on strategic appointments and board members; d. Implement appropriate safeguards against fraud and conflicts of interest; and e. Comply with applicable securities laws and regulations.
78. Defendants breached these duties by: a. Failing to prevent or address conflicts of interest in legal representation; b. Approving strategic bridge placements creating clear conflicts of interest; c. Neglecting to implement adequate safeguards against retaliatory conduct; d. Neglecting to conduct appropriate due diligence on Zagorski's connections and potential conflicts; and e. Permitting or facilitating the suppression of relevant historical information.
79. Defendants' breach of their duties of care was particularly egregious given Providence Equity's prior experience with fraud allegations through its ownership of Altegrity, which provided enhanced awareness of fraud risks and created a heightened duty to implement robust governance controls.
80. Defendants' negligent acts and omissions were the direct and proximate cause of harm to Plaintiff, including economic damages, reputational harm, and emotional distress.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Award compensatory damages in an amount to be determined at trial for the economic losses, reputational harm, and emotional distress suffered as a result of Defendants' unlawful conduct;

B. Award punitive damages in an amount sufficient to punish Defendants for their willful, wanton, and malicious conduct and to deter similar conduct in the future;

C. Award statutory damages as provided by law;

D. Grant injunctive relief prohibiting Defendants from further retaliatory conduct and requiring the implementation of appropriate safeguards to prevent such conduct in the future;

E. Award Plaintiff's costs, expenses, and reasonable attorneys' fees as allowed by law;

F. Award pre-judgment and post-judgment interest as allowed by law; and

G. Grant such other and further relief as this Court deems just and proper.

## VI. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 31, 2025

Respectfully submitted,

By: *Jamarlin Martin*

Jamarlin Martin

2234 North Federal Hwy #8516
Boca Raton, FL 33431
legal@nubaiventures.com