USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/16/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMARLIN MARTIN,

Plaintiff,

-v-

MARK ZAGORSKI, et al.,

Defendants.

25-cv-2715 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Defendants Mark Zagorski ("Zagorski"), Laura Desmond ("Desmond"), Davis Noell ("Noell"), and Kate Jhaveri ("Jhaveri") ("Individual Defendants"), and DoubleVerify Holdings, Inc. ("DoubleVerify") and Providence Equity Partners L.L.C. ("Providence Equity") (together with Individual Defendants, "Defendants") move, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing the amended complaint of Plaintiff Jamarlin Martin ("Plaintiff"), with prejudice, for failure to state a claim for relief. Dkt. Nos. 47, 49. Individual Defendants and Providence Equity also move, pursuant to Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5), to dismiss for failure to effect service. Dkt. Nos. 47, 49. For the following reasons, the motions to dismiss for failure to state a claim for relief are granted and the motions to dismiss for failure to effect service are denied.

**BACKGROUND**

The Court accepts the well-pleaded allegations of Plaintiff's complaint as true for the purposes of these motions and construes them to state the strongest claims they suggest. As best as can be understood, Plaintiff alleges the following:

## I. The Relevant Parties

Plaintiff is a business owner who identifies as a Black man. Dkt. No. 43 ("Am. Compl.") at 4. He is an expert in paid discovery marketing and a digital media entrepreneur. *Id.* Plaintiff is the founder and CEO of Nubai Ventures Inc. ("Nubai"), a company which beginning in 2012 had a business relationship with the digital advertising company, Outbrain Inc. ("Outbrain"). *Id.* at 4, 5.

DoubleVerify is a Delaware corporation with its principal place of business in New York. *Id.* at 5. It provides digital media verification services. *Id.* Providence Equity is a Delaware limited liability company that is the controlling shareholder of DoubleVerify. *Id.* Desmond is a managing partner at Providence Equity and a director of DoubleVerify, having previously served as Chief Executive Officer of DoubleVerify. *Id.* Noell is the Chairman of the Board of Directors of DoubleVerify. *Id.* Jhaveri is the Chief Marketing Officer at TikTok and was a member of the Board of Outbrain until September 2024. *Id.*

Zagorski is the current CEO of DoubleVerify; he is also a member of the Board of Directors of Outbrain. *Id*. Zagorski has a longstanding relationship with the primary backer of Outbrain, Viola Ventures. *Id*. Zagorski became CEO of DoubleVerify after the death of Lara Prychodko and the removal of DoubleVerify's former CEO Wayne Gattinella. *Id.*

## II. Whistleblowing Activity

Plaintiff claims to have discovered a widespread fraud campaign targeting the digital advertising industry and to have reported the existence of that scheme to Outbrain as a whistleblower. *Id.* at 6. He contends that he was the victim of retaliation for his role as a whistleblower. *Id.* at 7.

Plaintiff's whistleblowing activities were an outgrowth of the relationship of his company, Nubai, with Outbrain. *Id.* at 5. At some unidentified point, Plaintiff discovered that

Nubai's website, Moguldom.com, was the victim of fraud. *Id.* at 6. Plaintiff launched an investigation into "bot fraud" which led him to mapping "a much broader fraud conspiracy with foreign-based national security risks involving multiple companies and institutions and an intelligence grade bridge network with strategic placements at companies." *Id.* Plaintiff believes "he was confronting an intelligence-linked operation with potential state sponsorships" from the People's Republic of China, the United States, and Israel. *Id.* He alleges that his investigation "indicat[es] a complex and deceptive alliance of intelligence-linked operatives working to cover up national security vulnerabilities posing a security threat of historical proportions to U.S. digital advertising infrastructure." *Id.* To be successful, Plaintiff believes that the global ad-fraud conspiracy needed not only to create bot-traffic (synthetic, non-human website traffic) but also to control the activity of DoubleVerify, which was the "#1 ad fraud detection system globally." *Id.*

In February 2024, Plaintiff became United States Securities and Exchange Commission ("SEC") Whistleblower #17077-840-294-172 to report this systematic ad fraud affecting the global digital advertising market. *Id*. He alleges that he submitted multiple detailed supplements documenting the fraud conspiracy and its national security implications. *Id.* Thereafter, Plaintiff sent at least three whistleblower letters to Outbrain: two letters to the Board and a "demand" letter. On April 16, 2024, at a time when Jhaveri was a board member of Outbrain but Zagorski was not, Plaintiff published his first open letter to Outbrain's Board documenting that 80–90% of Outbrain's domain destinations used anonymous registrations and 70% of its revenue originated outside United States legal jurisdiction. *Id*.

Zagorski was appointed to Outbrain's Board on April 24, 2024, eight days after Plaintiff's first board letter. *Id*. On May 3, 2024, Plaintiff personally authored and published

"Board Letter #2" directly addressed to Outbrain's Board. *Id.* at 7. The public letter mentioned conflicts of interest with DoubleVerify. *Id.* In this letter, Plaintiff informed Defendants that he was "an unconventional whistleblower" and detailed the severe harm and retaliation he was experiencing as a "Black American entrepreneur challenging the systematic ad fraud conspiracy." *Id.* Plaintiff alleges this created direct individual engagement between Plaintiff and Defendants in their board capacities, establishing their personal knowledge of ongoing irregularities and systematic fraud allegations. *Id.*

On May 9, 2024, Plaintiff filed "Supplement #5" to the SEC specifically naming DoubleVerify and reporting the strategic appointment of DoubleVerify's CEO Zagorski to Outbrain's Board. *Id.* The SEC submission directly implicated DoubleVerify and Zagorski in potential securities violations. *Id.*

**III. Retaliation Campaign**

On March 17, 2025, Plaintiff sent a demand letter to Defendants and commenced litigation on behalf of Nubai against Outbrain in the Supreme Court of New York for New York County. *Id.*; *see* Dkt. No. 54 at 34. Plaintiff alleges that the demand letter explicitly warned Defendants: "this letter is addressed to DoubleVerify the corporation and its Board of Directors as potential defendants but to also document awareness that if any harm and additional obstruction to justice, whistleblower retaliation, intimidation, hacking or threats to [Plaintiff's] family, DoubleVerify the corporation and its individual Board Members shall be held responsible." Am. Compl. at 7–8. He alleges that shortly following this letter, on March 21, 2025, Desmond, the former CEO of DoubleVerify, sold more than $100,000 of stock in DoubleVerify. *Id.* at 5. Plaintiff also alleges that following this third letter, the coordinated retaliation escalated to include life-threatening conduct designed to silence a federal whistleblower through extreme intimidation and potential "elimination." *Id.* at 7.

The alleged coordinated retaliation campaign included death threats and assassination attempts, intelligence-grade surveillance and physical infiltration, systematic security system sabotage, advanced cyber-attacks, coordinated medical emergencies, systematic legal obstruction, coordinated intelligence-grade financial pressure, and evidence destruction. *Id.* at 8–9. In particular, Plaintiff alleges that he discovered a battery-powered 5G surveillance device on the wall of his residence after he commenced litigation against Defendants and that there was coordinated sabotage of his residential security system. *Id.* at 8. Plaintiff additionally alleges cyber-attacks through hacking of his eSIM card and interception of his SEC submissions. *Id.* He alleges that his attorney withdrew due to a conflict shortly after Zagorski's board appointment in an effort to "systemically frustrate" his access to justice, and that he experienced "systematic financial warfare." *Id.* Plaintiff further alleges that after he sent the demand letters and around the time he discovered the surveillance device in his home, he "experienced a medical emergency requiring emergency treatment that exhibited characteristics consistent with intelligence-grade poisoning." *Id.* On June 17, 2024, an FBI official contacted Plaintiff directly regarding potential criminal conduct by actors in the ad fraud conspiracy. *Id.* at 9.

Plaintiff alleges that the retaliation he experienced reflected racial animus because he gave Defendants direct notice that they were targeting a Black entrepreneur, Black Americans represent less than 3% of executive leadership in the advertising industry, and because Black whistleblowers and entrepreneurs face disproportionate retaliation in corporate settings. *Id.* at 9. He alleges that the intelligence-grade retaliation he experienced was disproportionate and therefore reflective of animus. *Id.* at 9.

**PROCEDURAL HISTORY**

Plaintiff initiated this action by complaint filed on March 31, 2025, alleging three causes of action: (1) whistleblower retaliation in violation of the Dodd-Frank Act, 15 U.S.C. § 78u-6;

(2) conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985(3); and (3) negligence. Dkt. No. 1. On May 6, 2025, Defendants moved to dismiss the complaint. Dkt. No. 18. After the original complaint's deficiencies were discussed with Plaintiff during an in-person hearing on June 16, 2025, the Court permitted him to file an amended complaint. Dkt. No. 33.

On August 3, 2025, Plaintiff filed an amended complaint alleging three causes of action: (1) conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985(3); (2) negligence; and (3) intentional infliction of emotional distress. Am. Compl.

On September 25, 2025, Zagorski, DoubleVerify, Desmond, Noell, and Providence Equity filed this motion to dismiss. Dkt. No. 47. That same day, Jhaveri filed a separate motion to dismiss pursuant to Rules 12(b)(4), 12(b)(5), and 12(b)(6) and joined in the other Defendants' motion. Dkt. No. 49. Plaintiff filed a memorandum of law in opposition to the motions to dismiss on November 3, 2025. Dkt. No. 54. Zagorski, Desmond, Noell, DoubleVerify, and Providence Equity filed a reply memorandum of law in further support of the motion on November 14, 2025. Dkt. No. 57. Jhaveri filed a reply memorandum of law in further support of her motion on November 17, 2025. Dkt. No. 58.

## LEGAL STANDARD

### I. Rule 12(b)(6)

On a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and draw all possible inferences from those allegations in favor of the plaintiff. *See York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002), *cert. denied*, 537 U.S. 1089 (2002). This requirement "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of

action" or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007). The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556.

The Court construes *pro se* pleadings broadly and liberally, interpreting them so as to raise the strongest arguments they suggest. *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000). This obligation "is especially true when dealing with pro se complaints alleging civil rights violations." *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 146 (2d Cir. 2002). However, while the Court construes *pro se* pleadings liberally, this does not relieve *pro se* plaintiffs of the requirement that they plead enough facts to "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (per curiam) (plaintiff must state a plausible claim for relief). Nor does it relieve them of the obligation to otherwise comply with the pleading standards set forth by the Federal Rules of Civil Procedure. *See Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007). "Thus, the Court's 'duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to rewrite it.'" *Davila v. Lang*, 343 F. Supp. 3d 254, 266 (S.D.N.Y. 2018) (quoting *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009)).

District courts may consider new factual allegations made in a *pro se* plaintiff's opposition papers where they are consistent with the complaint's allegations, but will not consider entirely new claims nor allow a plaintiff to use opposition filings to rewrite the complaint. *See Generation Next Fashions Ltd. v. JP Morgan Chase Bank, N.A.*, 698 F. Supp. 3d 663, 677 (S.D.N.Y. 2023) (citing *Braxton v. Nichols*, 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010)); *Pandozy v. Segan*, 518 F. Supp. 2d 550, 554 n.1 (S.D.N.Y. 2007), *aff'd*, 340 F. App'x 723 (2d Cir. 2009) (summary order); *Weerahandi v. Am. Statistical Ass'n*, 2015 WL 5821634, at *8 (S.D.N.Y. Sept. 30, 2015)).

## II. Rules 12(b)(4) and 12(b)(5)

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Buon v. Spindler*, 65 F.4th 64, 73 (2d Cir. 2023) (quoting *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006)). Therefore, to survive a motion to dismiss based on insufficient service of process, the plaintiff must demonstrate that he adequately served the defendants. *Id.* (citing *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010)).

## DISCUSSION

Plaintiff brings three claims in the amended complaint: (1) conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985(3), Am. Compl. at 12–13; (2) negligence, *id.* at 14–17; and (3) intentional infliction of emotional distress, *id.* at 17–21. Defendants argue that Plaintiff has failed to state a claim for relief because his allegations are insufficient to plausibly allege discriminatory animus, any actionable duty of care towards Plaintiff, or intentional conduct directed at Plaintiff. Dkt. No. 47-1 at 5–17. Defendants additionally argue that Plaintiff

failed to effect service on the Individual Defendants and Providence Equity. *Id.* at 18–20; Dkt. No. 49-2 at 210–212.[1]

## I. Section 1985(3)

"To make out a claim under Section 1985(3), the plaintiff must adequately allege '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.'" *Shin v. NBC Universal Media*, 2025 WL 438297, at *12 (S.D.N.Y. Feb. 7, 2025) (internal quotation marks and citation omitted); *see Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam).

Defendants argue Plaintiff's Section 1985(3) claim should be dismissed because (1) he fails to allege facts plausibly suggesting Defendants discriminated against him because of his race; (2) his asserted whistleblower status is insufficient to salvage this claim; and (3) he fails to plead other elements of a Section 1985(3) claim. Dkt. No. 47-1 at 8–12.

### A. Plaintiff Fails to Allege Facts Plausibly Suggesting Defendants Were Motivated by Class-Based Animus

To adequately plead a claim for conspiracy under Section 1985(3), a plaintiff must allege that the actions of the conspirators were "motivated by 'some racial or . . . [other] discriminatory animus.'" *Mian*, 7 F.3d at 1087–88 (quoting *United Bhd. of Carpenters & Joiners of Am., Loc. 610 v. Scott*, 463 U.S. 825, 829 (1983)); *see also Mira v. Kingston*, 715 F. App'x 28, 30 (2d Cir. 2017) (summary order); *Grillo v. N.Y.C. Transit Auth.*, 291 F.3d 231, 234 (2d Cir. 2002) (Section 1985(3) requires evidence "that the actions of the individual [defendants] were motivated by

[1] Citations to this docket entry use ECF pagination.

racial animus or ill-will"). The plaintiff "must make 'a showing of class-based invidiously discriminatory animus' on the part of the conspiring parties, as well as provide 'some factual basis supporting a meeting of the minds, such that [the] defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" *Thomas v. DeCastro*, 2019 WL 1428365, at *7 (S.D.N.Y. Mar. 29, 2019) (internal quotation marks and citations omitted); *accord Gong v. Sarnoff*, 2023 WL 4561800, at *10 (S.D.N.Y. July 17, 2023). Plaintiff must allege that that the co-conspirators committed to their course of conduct "at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 272 (1993) (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). "Congress's "central concern' was to 'combat[] the violent and other efforts of the [Ku Klux] Klan and its allies to resist and to frustrate the intended affects of the Thirteenth, Fourteenth, and Fifteenth Amendments.'" *Abadi v. Am. Airlines, Inc.*, 2024 WL 1346437, at *22 (S.D.N.Y. Mar. 29, 2024) (quoting *United Bhd*, 463 U.S. at 837). Plaintiff has not alleged facts to support a plausible inference that Defendants were motivated by discriminatory animus.

Plaintiff argues that the conspirators must have been motivated by his race when they agreed to retaliate against him because he disclosed his race to Defendants and, in his own communications, framed himself as a racial target. Plaintiff alleges he explicitly informed Defendants in Board Letter #2 that "[he is] an unconventional whistleblower" and detailed the severe harm and retaliation he was experiencing as a "Black American entrepreneur challenging the systematic ad fraud conspiracy." Am. Compl. at 9. He further alleges a "consistent pattern of racial component documentation" and specifically that he raised "racial targeting as a material factor" in communications with his attorney, in his SEC whistleblower submissions, in Board Letter #2, and in the pre-suit demand letter to DoubleVerify. *Id.* at 10. He further alleges that

the retaliation was "heightened and more severe due to his race" because "Black American whistleblowers and entrepreneurs face disproportionate retaliation in corporate settings," *id.*, and that Defendants "chose to escalate rather than cease their retaliatory conduct" upon learning of his race, *id.* at 9.

The facts pleaded by Plaintiff do not give rise to a plausible inference of race-based animus. Plaintiff's own perception that he was the victim of racial discrimination cannot support a claim of race discrimination in the absence of facts that give rise to that reasonable perception. *See McConkey v. Churchill Sch. & Ctr.*, 2026 WL 1328605, at *25 (S.D.N.Y. May 13, 2026) (citing *Kim v. Regeneron Pharm., Inc.*, 2026 WL 820603, at *9 (S.D.N.Y. Mar. 25, 2026)); *Desir v. Bd. of Co-op. Ed. Servs.*, 803 F. Supp. 2d 168, 179 (E.D.N.Y. 2011), *aff'd*, 469 F. App'x 66 (2d Cir. 2012) (summary order). A plaintiff does not plausibly allege discriminatory animus simply by declaring that he was the victim of discrimination. *See Reeves v. CMP Consultants, Inc*, 2023 WL 2163327, at *3 (S.D.N.Y. Feb. 22, 2023) (allegations that Defendants "subjected [him] to racial profiling, housing discrimination, [and] tactics to obstruct and/to prevent him from moving into this predominantly 'white people' occupied building" merely "conclusory and speculative assertions" that do not support claim of discrimination under the Fair Housing Act (internal quotation marks and citation omitted)). Moreover, Plaintiff alleges the retaliation began before Board Letter #2, and before Plaintiff had identified his race to Defendants at all. Am. Compl. at 7, 9; *see id.* at 7 (alleging that Board Letter #2 "detailed the severe harm and retaliation he was experiencing").

Likewise, it is not sufficient to hold Defendants liable for a race-based conspiracy on the theory that, statistically, Black Americans are treated more unfairly than other Americans; Plaintiff must allege facts to give rise to the inference that Defendants acted as a result of race-

based animus. *See Mears v. Allstate Indem. Co.*, 336 F. Supp. 3d 141, 150 (E.D.N.Y. 2018) (to allege animus under Section 1981, insufficient "merely to assert . . . that the action was a product of racial animus . . . [w]ithout the required factual support, [plaintiff's] claim is merely a naked allegation of racial discrimination" (internal quotation marks and citations omitted)). When a plaintiff seeks to draw an inference of animus on the basis of the treatment of others outside the protected group, he must allege that there exist others who are similarly situated, do not share the protected characteristic, and were treated more favorably. *See Carris v. First Student, Inc.*, 682 F. App'x 30, 32 (2d Cir. 2017) (summary order) (to raise inference of employment discrimination based on treatment of others, "plaintiff may allege 'the more favorable treatment of employees not in the protected group' who are 'similarly situated in all material respects.'" (first quoting *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015); then quoting *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014))). Plaintiff fails to do so. It is not Defendants' duty to identify "a similarly situated white whistleblower" who has been subject to the same alleged treatment as Plaintiff. Dkt. No. 54 at 15. Plaintiff does not allege that Defendants treated similarly situated non-Black whistleblowers or business counterparties differently, that any Defendant made a race-based remark, or even that the character of the alleged conduct changed after Plaintiff disclosed his race in Board Letter #2 on May 3, 2024. *Cf. Tchatat v. City of New York*, 2015 WL 5091197, at *12 (S.D.N.Y. Aug. 28, 2015) (denying motion to dismiss Section 1985(3) claim where plaintiff alleged that he was called a racial slur as defendants falsely accused him of shoplifting and beat him), *on reconsideration in part*, 2015 WL 6159320 (S.D.N.Y. Oct. 20, 2015). Instead, Plaintiff argues that "[t]he intensity and breadth of the retaliation escalated in direct correlation with Plaintiff's public disclosures," supplying a reason for the escalating retaliation distinct from his race. Dkt. No. 54 at 15.

Moreover, the nature of the retaliation allegedly suffered by Plaintiff does not support a claim of race-based animus. Plaintiff alleges an array of "intelligence-grade" threats ranging from a conflict of interest with his lawyer to implanted surveillance devices on his wall and assassination attempts. Am. Compl. at 8–9; *see also* Dkt. No. 54 at 22–24.[2] Courts in this District have repeatedly declined to credit allegations of a fantastical character at the pleading stage, even where the plaintiff proceeds *pro se* and even where those allegations are the load-bearing premise for a discrimination claim. *See Campbell v. Columbia Univ.*, 2023 WL 6038024, at *8 (S.D.N.Y. Sept. 15, 2023) ("Courts in this District, faced with claims based on similarly fantastical theories, have consistently dismissed them for failure to state a claim, even when the plaintiff proceeded *pro se*."); *Shukla v. Deloitte Consulting LLP*, 2021 WL 1131507, at *2 (S.D.N.Y. Mar. 24, 2021) (Nathan, J.) (dismissing *pro se* claims not "grounded in reality"); *Burke v. Verizon Commc'ns, Inc.*, 2019 WL 13146782, at *11 (S.D.N.Y. Mar. 29, 2019) (dismissing *pro se* complaint containing "a host of confusing and fantastical allegations"). Even if the Court were to credit these allegations, Plaintiff has alleged no facts supporting an inference that these acts had any relation to his race. *See Stinson v. City Univ. of N.Y.*, 2018 WL 2727886, at *9 (S.D.N.Y. June 6, 2018) (dismissing discrimination claims where plaintiff "lists numerous adverse actions against him—hearings, suspensions, and finally termination—but fails to connect the dots between these actions and any inference whatsoever of discriminatory animus"). Nothing in his allegations gives rise to an inference that Plaintiff was treated the way he was because of the color of his skin rather than because of the nature of his allegations.

[2] Citations to this docket entry use ECF pagination.

**B. Plaintiff's Alleged Whistleblower Status is Not a Protected Class**[3]

Plaintiff also pleads that Defendants targeted him because of his status as an SEC whistleblower. Dkt. No. 43 at 9. That allegation also fails to state a claim under Section 1985(3).

Section 1985(3) "*creates* no rights." *Great Am. Fed. Sav. & Loan Ass'n v. Novonty*, 442 U.S. 366, 377 (1979). To plead a violation, the plaintiff must identify "some otherwise defined federal right—to equal protection of the laws or equal privileges and immunities under the laws—[that] is breached by a conspiracy in the manner defined by the section." *Id.* The right to act as an SEC whistleblower is not one of the rights enforceable through Section 1985(3). *See Williams v. Rosenblatt Sec. Inc.*, 136 F. Supp. 3d 593, 610–11 (S.D.N.Y. 2015).

In *Williams*, the court rejected a claim almost identical to the claim that Plaintiff brings here. The plaintiff there alleged that he was subject to a "concerted campaign of harassment . . . with the purpose of inducing the deterioration of the plaintiff's mental state" and culminating in the termination of his employment because of a whistleblower complaint he made to the SEC implicating one of the defendant's customers. *Id.* at 601–03. Judge Koeltl held that the plaintiff had not stated a claim for relief under Section 1985(3). Citing the Second Circuit's unpublished opinion in *Tavoloni v. Mount Sinai Med. Ctr.*, 198 F.3d 235 (2d Cir. 1999) (table decision), he concluded that whistleblowers were not a protected class under Section 1985(3). *Id.* at 610; *see also id.* at 609 ("Section 1985(3) does not reach conspiracies motivated by economic or commercial animus." (citing *United Bhd.*, 463 U.S. at 838)). In addition, the United States

[3] In his opposition to the motion to dismiss, Plaintiff disavows the theory that he was subject to discrimination on the basis of whistleblower status. *See* Dkt. No. 54 at 16 ("The plaintiff's civil rights conspiracy claim is not dependent on the complimentary factor of being a Securities and Exchange Commission whistleblower or SEC whistleblowers being a protected class"). The Court nonetheless discusses Plaintiff's allegation for purposes of completeness.

Constitution did not give the plaintiff a right to act as a whistleblower. *Id.* at 610. Because the plaintiff had "failed to allege the class-based discriminatory animus or a violation of a protected constitutional right," the court concluded that his Section 1985(3) claim must be dismissed. *Id.* at 611. For the same reasons, Plaintiff's Section 1985(3) claim also must be dismissed.

## II. Negligence Claim

Plaintiff also brings a claim for negligence or negligent enablement against all Defendants. He alleges that all of the Defendants negligently retaliated against him or enabled or facilitated the retaliation against him. Am. Compl. at 14–17. Plaintiff alleges, for example, that Zagorski "[n]egligently accepted [a] strategic board appointment," "facilitated coordinated obstruction of Plaintiff's SEC whistleblower activities," "failed to prevent institutional resources from being systematically deployed against Plaintiff," and "[n]egligently escalated retaliation." *Id.* at 15. He alleges that Desmond "[n]egligently enabled institutional coordination across Providence Equity portfolio companies that facilitated systematic retaliation against Plaintiff" and "acquiesced in strategic positioning that enabled coordinated harassment and intimidation of federal whistleblower." *Id.* He makes similar allegations against the other Defendants. *Id.* at 15–16. Plaintiff alleges that Defendants' receipt of Board Letter #2 and the demand letter imposed upon them a duty to protect him from future retaliation. *Id.* at 14, 16.[4] His allegations do not state a claim for relief.

---

[4] In his original complaint, Plaintiff alleged that "Defendants, as corporate officers and directors, owed a duty of care to: a. Properly oversee corporate governance and prevent conflicts of interest; b. Prevent retaliatory actions against whistleblowers; c. Conduct adequate due diligence on strategic appointments and board members; d. Implement appropriate safeguards against fraud and conflicts of interest; and e. Comply with applicable securities laws and regulations. Dkt. No. 1 ¶ 77. He does not renew that allegation in the amended complaint. In any event, it is without merit. The duty of care owed by officers and directors of a Delaware public company is owed to the corporation and not to a person such as Plaintiff with whom they enjoy no fiduciary relationship. *See Lumio Holdings, Inc.*, 2026 WL 2593300, at *9 (Bankr. D. Del. Aug. 31, 2026) ("Under Delaware law, corporate officers and directors owe the corporations they serve duties of

A plaintiff seeking to allege a defendant's negligence under New York law must plead: "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 675 (S.D.N.Y. 2024) (quoting *Union Mut. Fire Ins. Co. v. Ace Caribbean Mkt.*, 64 F.4th 441, 445 (2d Cir. 2023)). "[A] threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party." *SUEZ Water N.Y. Inc. v. E.I. du Pont de Nemours & Co.*, 578 F. Supp. 3d 511, 552 (S.D.N.Y. 2022) (quoting *Espinal v. Melville Snow Contractors, Inc.*, 773 N.E.2d 485, 487 (N.Y. 2002)). "Whether a defendant owes a duty of care to a plaintiff 'is a question of law that the Court may properly determine on a motion to dismiss.'" *Essilor Int'l SAS v. J.P. Morgan Chase Bank, N.A.*, 650 F. Supp. 3d 62, 86–87 (S.D.N.Y. 2023) (internal quotation marks and citation omitted); *see Musalli Factory For Gold & Jewelry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 27 (S.D.N.Y. 2009) (Nathan, J.), *aff'd*, 382 F. App'x 107 (2d Cir. 2010) (summary order)).

Plaintiff alleges that a duty of care arose as a result of his May 3, 2024 open letter to the Outbrain Board and his March 2025 demand letter to DoubleVerify. Am. Compl. at 16. Plaintiff claims that his "explicit warning" that he was facing potential obstruction of justice "created a direct duty to prevent further harm to Plaintiff" and that "[a]fter awareness within the DoubleVerify . . . Board of the severe obstructive and retaliatory harm to the plaintiff, the pattern of harms only accelerated." *Id.* at 14. The New York Court of Appeals has held, however, that "[f]oreseeability, alone, does not define duty—it merely determines the scope of the duty once it

care and loyalty." (citing *Gantiler v. Stephens*, 965 A.2d 695, 708–09 (Del. 2009))); *cf. In re: Old Bpsush, Inc.*, 2021 WL 4453595, at *9 (D. Del. Sept. 29, 2021) (rejecting argument that officers owed fiduciary duty to auditors because it "would exceed an officer's duty of care to a corporation and its shareholders").

is determined to exist." *Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1060 (N.Y. 2001) *opinion after certified question answered*, 264 F.3d 21 (2d Cir. 2001). To allege a duty of care, "[t]he injured party must show that a defendant owed not merely a general duty to society but a specific duty to him or her, for without a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm." *Id.* (citation modified). Plaintiff has not alleged facts supporting that Defendants owed him any duty. Plaintiff asserts a duty of care based on his letters to Defendants informing them of the retaliation he faced; he provides no plausible allegations that this retaliation had any relation to his company's business relationship with Outbrain, that Defendants were directly involved in the acts of retaliation, or that Defendants had any other relationship with Plaintiff that would create a duty of care. *See Shostack v. Diller*, 2015 WL 5535808, at *5 (S.D.N.Y. Sept. 16, 2015) (dismissing tort claims against corporate officers for failing to prevent illegal credit check and telemarketing calls because plaintiff made no allegations that officers were directly involved in alleged acts, plaintiff had no prior business relationship with defendants, and, "[t]o the extent officers and directors of a corporation owe a duty of care, they owe that duty to the corporation itself, not to individual members of the general public"), *report and recommendation adopted*, 2016 WL 958687 (S.D.N.Y. Mar. 8, 2016). Moreover, even accepting that Plaintiff informed Defendants he was harmed and that future harm was foreseeable, there is "no duty to control the conduct of third persons so as to prevent them from harming others." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (quoting *D'Amico v. Christie*, 518 N.E.2d 896, 901 (N.Y. 1987)). Absent any duty of care, Plaintiff's claim for negligence necessarily fails.

**III. Intentional Infliction of Emotional Distress**

Plaintiff's third cause of action is for intentional infliction of emotional distress ("IIED"). Dkt. No. 43 at 17–22. Plaintiff alleges that Defendants subjected him to "death threats and

assassination attempts," "security system sabotage," "advanced cyber-attacks," "intelligence-grade physical surveillance" involving a "battery-powered 5G surveillance device," "intelligence-grade poisoning," and "intelligence-grade financial pressures" for his whistleblower activities. Am. Compl. at 17–18.

Under New York law, in order to state a claim for IIED, a plaintiff must plead: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Blanco v. Success Academy Charter Sch.*, 722 F. Supp. 3d 187, 216 (S.D.N.Y. 2024) (quoting *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999)). "These requirements, especially that of extreme and outrageous conduct, 'are rigorous and difficult to satisfy.'" *Id.* (quoting *Moraes v. White*, 571 F. Supp. 3d 77, 104 (S.D.N.Y. 2021)); *see Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (1993). IIED is a "highly disfavored [tort] under New York law." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014); *see also Sesto v. Slaine*, 171 F. Supp. 3d 194, 202 (S.D.N.Y. 2016) (Nathan, J.) (noting that IIED claims are frequently dismissed on pre-answer motion). The conduct alleged must be "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985); *see also Chanko v. Am. Broad. Cos. Inc.*, 49 N.E.3d 1171, 1179 (N.Y. 2016).

Plaintiff's IIED claim is predicated on the notion that he was the victim of a "death threat, hacking of electronic devices, acoustic assaults, installation of a 5GHz listening device, and intentional disabling of security cameras." Dkt. No. 54 at 18; *see also, e.g.*, Dkt. No. 54 at 22 ("poisoning" and "intermittent high-frequency acoustic emissions transmitted through

[plaintiff's] headset"); *id.* at 23 ("surveillance equipment and security system sabotage"); *id.* ("hotel incident and continued harassment"); *id.* at 24 ("IRS interference"); *id.* at 47 ("suspicious neighbor and hacking after SEC whistleblower activity begins"); Dkt. No. 54-1 at 11 (bladder cancer); Dkt. No. 54-6 at 5–6 (flooding, smoke, and alarm at Hilton Garden hotel room in Boca Raton). Plaintiff seems to ascribe every hardship he has suffered to retribution from Defendants.

Plaintiff's claims are too "fanciful, fantastic or delusional" to withstand a motion to dismiss. *Campbell*, 2023 WL 6038024, at *7 (quoting *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011)); *see also Sanders v. New York Times*, 2023 WL 3724818, at *5 (S.D.N.Y. May 30, 2023) (a *pro se* "Plaintiff's generalized assertions—that the United States military is attempting to kill her and that the defendant media companies have failed to report her allegations—do not provide any plausible factual support for a viable legal claim and appear to rise to the level of the irrational"); *Shukla*, 2021 WL 1131507, at *2 (dismissing *pro se* complaint where claims were not "grounded in reality"); *Burke*, 2019 WL 13146782, at *11 (dismissing a *pro se* plaintiff's complaint which "plead[ ] a host of confusing and fantastical allegations concerning Verizon, including that it has engaged in a myriad of illegal activities over the years"); *Calderon v. Int'l Monetary Fund*, 2022 WL 4485342, at *2 (S.D.N.Y. Sept. 26, 2022) ("Plaintiff provides no facts supporting her assertion that IMF hacked her emails and her television and constantly bothers her and sends text messages to her. Allegations such as these are legally classified as frivolous."); *Cornelius v. Jagger*, 2022 WL 2819443, at *3 (S.D.N.Y. July 18, 2022) ("Plaintiff's assertions—that Defendant Jagger planned to buy a house with her in Illinois, took her money and won't give it back until she gives him a baby, was mentally and emotionally abusive toward her, and used other celebrities to antagonize Plaintiff—do not provide any plausible factual support for her claim and appear to rise to the level of the irrational.").

Even if Plaintiff's claims of injury could be credited, he fails to allege facts that suggest that Defendants were the source of such injury. *See Martin*, 762 F.2d at 220 (defendant must have intentionally directed the conduct at the plaintiff). He alleges that Defendants "personally participated" in each form of retaliatory act, but provides no factual allegations to support the inference that any Defendant, much less all of them, were involved in the acts. It may be, for example, that Plaintiff had a medical emergency shortly after the demand letters, Am. Compl. at 8, that Plaintiff's physician was "unable to attribute a definitive etiology for his patient's diagnosis," Dkt. No. 54-1 at 11, and that Plaintiff's treating oncologist informed him that "chemical poisoning could not be ruled out as a primary contributing factor," Dkt. No. 54 at 22 ¶ 18, but those allegations do not support an inference that Defendants caused his disease. *See also id.* at 22 ¶¶ 20–22 (noting "high-frequency acoustic emissions" on his headset during work calls with no allegations tying such "acoustic interference" to Defendants).

Neither Plaintiff's allegations in the amended complaint nor the exhibits submitted in opposition state a plausible claim for intentional infliction of emotional distress. Defendants' motion to dismiss his claim for IIED is granted.

## IV. Failure to Effect Service

Because the Court dismisses the amended complaint for failure to state a claim upon which relief can be granted, it need not reach Defendants' argument that Plaintiff failed to properly effect service. Nevertheless, the Court addresses the issue to clarify that dismissal of the amended complaint for improper service is not warranted.

At the time of the original motion to dismiss, the Court had already granted Plaintiff leave to file and serve an amended complaint to cure any deficiencies in the original complaint, and Defendants consented to Plaintiff's filing of an amended complaint. Dkt. No. 33; Dkt. No. 45 at 2 (noting Defendants did not oppose filing of amended complaint). Plaintiff filed the

amended complaint on ECF on August 3, 2025, in accordance with the Court's instructions, and then properly served Defendants pursuant to Rule 5. Dkt. No. 43; *see* Fed. R. Civ. P. 5(b)(2)(E); 4B Wright & Miller § 1144 n.6. "Under these circumstances, the [Defendants] waived [their] right to contest whether service of process was proper on account of the lack of service of the original *pro se* complaint by consenting to the filing of the amended complaint." *Buon*, 65 F.4th at 75. Accordingly, the Individual Defendants and Providence Equity's motion to dismiss under Rules 12(b)(4) and (b)(5) is denied.

**V. Leave to Amend**

"The Second Circuit 'generally disfavor[s] the dismissal of *pro se* complaints without leave to replead.'" *Cameron v. Garland*, 2026 WL 1707077, at *5 (S.D.N.Y. June 12, 2026) (quoting *Foy v. N.Y. State Unified Ct. Sys.*, 740 F. Supp. 3d 136, 155 (E.D.N.Y. 2024)); *see Hunt v. Klein*, 476 F. App'x 889, 891 (2d Cir. 2012) (summary order). "Still, even *pro se* litigants may be denied leave to amend when an amendment would be futile." *Cameron*, 2026 WL 17077, at *5 (internal citation and quotation marks omitted). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

Amendment would be futile because the deficiencies in Plaintiff's claims are substantive and cannot be cured by further amendment. Plaintiff has already been afforded an opportunity to amend his pleading, and his amended complaint continues to rely on allegations that are insufficient to state a plausible claim. With respect to the conspiracy and intentional infliction of emotional distress claims, additional allegations would not cure the fundamental deficiency that Plaintiff's theories rest on implausible and unsupported assertions. *See Campbell*, 2023 WL 6038024, at *8 ("further amended pleadings will not render the allegations less fanciful and more

plausible"). "Courts routinely look to proposed amended complaints to assess futility," and Plaintiff's "supplemental pleadings simply expound on the implausible conspiracy claims." *Id.* (citing *Panther Partners Inc.*, 347 F. App'x at 622). Plaintiff's negligence claim is likewise incurable because he fails to allege the existence of an affirmative duty owed by Defendants.

Having previously granted Plaintiff leave to amend and having afforded him the opportunity to cure the deficiencies in his original pleading, the Court concludes that further amendment would be futile. Accordingly, Plaintiff's claims are dismissed with prejudice. *See id.*; *see also Teman v. Zeldes Needle Cooper LLP*, 2026 WL 880298, at *5 (S.D.N.Y. Mar. 31, 2026) (citing cases).

**CONCLUSION**

The motion to dismiss is GRANTED with prejudice.

The Clerk of Court is respectfully directed to close Dkt. Nos. 47 and 49, and to close this case. The Clerk of Court is respectfully directed to enter judgment for Defendants.

SO ORDERED.

Dated: September 16, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge